## Dodson, et al. v. Dodson.

(Decided March 15, 1911.)

### Appeal from Larue Circuit Court.

Title—Action to Quiet—Gift of Note—Evidence.—In 1869 appellee's father conveyed to appellee a tract of land. The consideration was four notes aggregating $600, payable in one, two, three and four years from date. Appellee's father died in 1898; nine years later appellee brought this action against appellants to quiet his title. Appellants each asserted an undivided interest in the land. Appellee testified without objection that his father gave him the notes. He also introduced a deed executed by him and his father to another, which though never delivered, directed that the purchase money be paid to appellee. During the remainder of his lifetime his father took no steps to collect the notes. For nine years after his death appellants took no steps. When sued they did not assert any interest in the notes, but claimed title to the land. Held that the evidence, together with the long delay in asserting any interest in the land or notes, was sufficient in the ab-

sence of any evidence to the contrary to establish the fact that the father had given appellee the notes.

JONES & GRAHAM and JOHN C. FRIEND for appellant.

WILLIAMS & HANDLEY for appellee.

OPINION OF THE COURT BY WM. ROGERS CLAY, COMMISSIONER—Affirming.

Charging that he was the owner of and in possession of a tract of land, consisting of about fifty acres, located in Larue county, Kentucky, appellee, J. A. Dodson, brought this action on December 23, 1908, against A. W. Dodson, America Brashear and her husband, Winfield Brashear, to quiet his title. These parties were all non-residents. A corresponding attorney was appointed to notify them of the nature and pendency of the action. This he did, and the letters he received in reply from non-residents indicated that they contemplated the employment of other counsel. The case was continued from time to time to give them opportunity to do so, but they made no defense.

On October 6, 1909, Annie S. Thurman and Cynthia A. Jones filed their petitions, in which their husbands united, asking to be made parties to the action. On January 3, 1910, appellants, George L Dodson and W. J. Dodson, filed separate petitions asking that they be made parties to the action. In these several petitions no denial was made of the allegations of the original petition, but each asserted that he was the owner of an undivided one-eighth interest in the tract of land in controversy and that the possession of appellee, J. A. Dodson was wrongful and that he unlawfully withheld the land.

Upon submission of the case the chancellor gave judgment in favor of the appellee, J. A. Dodson. From that judgment this appeal is prosecuted.

The evidence shows that on June 9, 1869, B. G. Dodson, the father of appellee, J. A. Dodson, signed and delivered a title bond to the land in controversy to A. W. Dodson. The consideration was $600, for which sum A. W. Dodson at the time executed his four promissory notes, the last of which was due four years after date. On November 14, 1870, A. W. Dodson assigned the bond to his brother, the appellee, J. A. Dodson. The purchase notes given by A. W. Dodson were surrendered to him,

and appellee, J. A. Dodson, in lieu thereof, executed to his father an equal number of notes for an equal amount and payable upon the same terms and conditions. Appellee Dodson then took possession of the land in controversy and has had possession of the property ever since.

It appears from appellee's testimony, to which no objections or exceptions were interposed, that, at one time, he offered to surrender the land if his father would surrender the notes. His father told him to keep the land, and gave him the notes. Appellee had paid on the notes about $300. The last payment was made about twenty years before his father's death. On April 1, 1898, the father, B. G. Dodson, and his wife united with J. A. Dodson and his wife in a deed to the land in controversy to one W. J. Hodge. The consideration was $1,050. Of this sum $200 was cash in hand paid, $500 was to be paid April 15, and $350 to be paid at any time within twelve months from the date of the deed. The deed directed that all the consideration should be paid to appellee, J. A. Dodson. For some reason the deed was not delivered and the transaction fell through.

The father, B. G. Dodson, died in September, 1899. He left a will dated May 5, 1897. By this will he devised to his wife, M. A. Dodson, all his household plunder, and gave to his daughter, Annie S. Thurman, and her husband all his land subject to the widow's dower. After giving to his other children one dollar each, he directed that upon his death whatever was owing to him by his children should be equally divided among them. W. N. Joyce was appointed administrator. After the testator's death, no effort was ever made by the administrator or any one else to collect the notes executed by appellee. Upon the death of the testator's wife the notes in question were sent to Cynthia A. Jones. Upon being assured by appellee that they were barred, she delivered them to appellee. Each of the other children of B. G. Dodson knew that appellee was in possession of the land in controversy and was claiming it as his own. None of them presented any claim by virtue of the notes, or asserted any lien on the land, but each claimed that he was entitled to an undivided one-eighth interest in the land.

The trial court seems to have decided in favor of appellee on the ground of adverse possession by him. Inasmuch, however, as he was the grantee of the title bond and had executed notes for the land in controversy,

it may be doubted if the evidence is sufficient to show an adverse holding; but there is some evidence tending to show a gift of the notes to appellee. A strong circumstance in favor of this contention is the deed in which the father united, directing that the purchase money be paid to appellee. In addition to this, the only evidence upon the question shows that the last payment made upon the note was about twenty years prior to B. G. Dodson's death. From that time to his death, he made no attempt to collect the notes. About nine years after his death this action was instituted. Not until then did the other children assert any interest in the land or claim that the notes had not been paid. Even then they asserted a direct interest in the land, and not an interest in the notes. Nor did they attempt to prove an interest in or title to the notes. Under the father's will all the indebtedness due him by his children was to be equally divided among them. So far as this record is concerned, appellants may have each been indebted to their father in a sum exceeding the amount of appellee's indebtedness on the notes in controversy. That being true, they had no interest in the notes. When we consider the fact that there was some direct evidence tending to show a gift of the notes, coupled with the failure of the father to take any action during his lifetime, and the failure of the executor and appellants to take any steps for nine years after the death of the father, which is a circumstance tending to support the theory of a gift, we conclude that the evidence of a gift was sufficient to throw upon appellants the burden of showing the contrary. Having failed to do this, and having failed to allege or prove any title to, or interest in the notes, we conclude that the judgment of the chancellor should be affirmed, and it is so ordered.